COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1895**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV555

IN COURT OF APPEALS
DISTRICT III

EMILY SCHULTZ,

    PLAINTIFF-RESPONDENT,

WINNEBAGO COUNTY MEDICAL BENEFIT PLAN AND UNITED HEALTHCARE INSURANCE COMPANY,

    INVOLUNTARY-PLAINTIFFS,

  V.

WAYNE CLARK AND ARTISAN AND TRUCKERS CASUALTY COMPANY,

    DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed in part, reversed in part and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   In this personal injury case, Wayne Clark and his liability insurer, Artisan and Truckers Casualty Company, appeal from a judgment granted in favor of Emily Schultz.  Schultz sued for injuries she suffered when Clark's motorcycle struck her vehicle from behind.  The circuit court entered judgment after a jury found Clark 100% negligent in the accident and awarded significant damages.  For the reasons that follow, we reverse that portion of the judgment relating to the damages award for future medical expenses and remand to the circuit court for a new trial on only that issue.  We affirm the judgment in all other respects.

## BACKGROUND

¶2     On June 17, 2020, at approximately 5:30 p.m., Clark and Schultz were involved in a vehicle collision in Outagamie County that resulted in injuries to both parties.  Clark was riding a 2012 Harley-Davidson Street Glide motorcycle heading northbound on Interstate Highway 41 in the right lane.  According to Clark's testimony at trial, he was traveling at a speed of approximately 65 miles per hour and was following the vehicle in front of him, a car driven by McKaila Olson, at a distance of approximately 25 to 30 feet.  At the same time, Schultz was also heading northbound on Interstate Highway 41 in the left lane.

¶3     Traffic ahead of the drivers suddenly began to slow and come to a complete standstill due to an unrelated accident that had occurred further up the highway.  Both Schultz and Olson slowed and brought their vehicles to a complete stop in response to the traffic backup.  Clark testified that he applied his brakes and attempted to maneuver to the left around Olson's vehicle.  Although Olson

2

disagreed during her testimony, Clark claimed that at that same time he moved to the left, Olson's vehicle also veered to the left, which cut off Clark's path around her vehicle. As a result, Clark's motorcycle sideswiped the left rear corner of Olson's vehicle, causing Clark to be thrown clear from his motorcycle. Physics then propelled Clark's unmanned motorcycle forward until it struck the rear of Schultz's stopped vehicle.

¶4 Schultz filed this personal injury action against Clark and Artisan in May 2023, alleging claims for negligence and negligence per se.[1] Schultz alleged that as a result of the accident, she suffered neck pain and headaches, which required ongoing medical treatment.

¶5 Following a five-day trial in March 2025, the jury found Clark 100% negligent in causing the collision. The jury awarded Schultz total damages of $2,437,243.24, comprised of $300,000 for past pain, suffering, and disability; $600,000 for future pain, suffering, and disability; $108,493.24 for past medical expenses; and $1,428,750 for future medical expenses. We discuss the testimony presented at trial as necessary below.

¶6 Clark and Artisan (hereinafter and collectively, "Clark") moved the circuit court to set aside the verdict and grant a new trial pursuant to WIS. STAT. § 805.15(1) (2023-24).[2] Clark alleged six errors entitling him to a new trial.

---

[1] Schultz also made a claim against her underinsured motorist insurance carrier, American Family Mutual Insurance Company. American Family was dismissed from this action pursuant to a stipulation of the parties.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

Following a nonevidentiary hearing, the circuit court denied Clark's motion in all respects. Thereafter, judgment was entered in favor of Schultz. Clark appeals.[3]

## DISCUSSION

¶7 On appeal, Clark renews his arguments before the circuit court seeking a new trial. A party may move for a new trial and to set aside a verdict, pursuant to WIS. STAT. § 805.15(1), "because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice." "The [circuit] court's ruling on a motion for a new trial is highly discretionary and will not be reversed on appeal in the absence of a showing of [an erroneous exercise of discretion]." *Priske v. General Motors Corp.*, 89 Wis. 2d 642, 663, 279 N.W.2d 227 (1979). "[W]e will uphold the circuit court's exercise of discretion, so long as it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach." *Weber v. White*, 2004 WI 63, ¶18, 272 Wis. 2d 121, 681 N.W.2d 137.

---

[3] Throughout Clark's appellate briefing, he fails to properly cite the case law he invokes to support his legal contentions. WISCONSIN STAT. RULE 809.19(1)(e) requires an appellant to support legal contentions with citations conforming to the Uniform System of Citation and SCR 80.02. Under SCR 80.02(1)(a) and (3)(b), proper citations to case law issued on or after January 1, 2000, "shall" include the public domain citation and reference to paragraph numbers where the legal principle may be found. Clark fails to comply with SCR 80.02 throughout his briefs. The Rules of Appellate Procedure are designed, in part, to facilitate the work of this high-volume court, and our work is hindered through such improper and inaccurate citations. *See State v. Kliss*, 2007 WI App 13, ¶6 n.4, 298 Wis. 2d 275, 728 N.W.2d 9 (2006).

We also note that throughout her brief, Schultz refers to the parties by their party designations, rather than by name, in violation of WIS. STAT. RULE 809.19(1)(i). We admonish both counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

¶8 Clark asserts that the circuit court erroneously exercised its discretion by denying his motion for a new trial on several bases.[4] First, he asserts that the court erred by allowing Schultz to recover damages for the costs of future medical treatment—specifically, physical therapy and chiropractic care—that were not supported at trial by expert testimony. On this issue, and as we explain below, we agree with Clark and conclude that the record is devoid of evidence from a medical doctor or chiropractor that Schultz will require physical therapy and/or chiropractic care in the future *as a result* of her injury from this accident, as well as the nature and extent of that care. Therefore, we reverse and remand for a new trial on that issue alone.

¶9 Clark's remaining issues allege that the circuit court erred by (1) allowing an accident reconstruction expert to instruct the jury on the following distance recommended in the Wisconsin Motorcyclists' Handbook (the Handbook) and to testify that Clark failed to maintain the proper following distance; (2) refusing to give WIS JI—CIVIL 405 to the jury; (3) refusing to give the nonstandard instruction from *Millonig v. Bakken*, 112 Wis. 2d 445, 452, 334 N.W.2d 80 (1983), to the jury; (4) failing to grant a new trial because Schultz's counsel referenced before the jury that he took Clark's deposition in prison; and (5) failing to grant a new trial due to Schultz's counsel's "inflammatory and prejudicial closing argument." On these issues, we affirm the circuit court's judgment.

---

[4] We note that in both his brief-in-chief and his reply brief, Clark uses the phrase "abused its discretion" when referring to the standard of review. In 1992, our supreme court replaced the phrase "abuse of discretion" with "erroneous exercise of discretion." *See, e.g.*, *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶9 n.6, 242 Wis. 2d 153, 624 N.W.2d 375.

## I. Future medical expenses award

¶10   On the first issue—Schultz's award for the costs of future medical expenses—we have explained that "[i]n order to sustain an award for future care and treatment, 'two criteria must be met: (1) there must be expert testimony of permanent injuries, requiring future medical treatment and the incurring of future medical expenses; and (2) an expert must establish the cost of such medical expenses.'" *See J.K. v. Peters*, 2011 WI App 149, ¶39, 337 Wis. 2d 504, 808 N.W.2d 141 (citation omitted).   Nevertheless, the "law does not require mathematical certainty to determine future health care expenses.  As long as the decision is based on probability and not possibility, the court can make such an award." *Id.* (citation omitted).

¶11   Further, our review of a jury's award is a limited one.  *See, e.g.*, *Morden v. Continental AG*, 2000 WI 51, ¶38, 235 Wis. 2d 325, 611 N.W.2d 659. We will sustain a verdict if there is any credible evidence to support it.  *Id.*  We will not upset the verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979).

¶12   During the trial, the jury heard testimony from several individuals describing Schultz's injuries and her need for treatment in the future.  In particular, Schultz's treating physician, who specializes in physical medicine and rehabilitation (PM&R), Dr. Benjamin Siebert, testified that Schultz had sustained a whiplash injury to her neck as a result of the crash, which caused neck pain and migraine headaches and which interfered with her activities of daily living. Siebert testified to a reasonable degree of medical certainty that the collision

caused a permanent injury to Schultz that required future medical care and treatment.

¶13 According to Siebert, Schultz had tried several different treatments to help alleviate her pain, including physical therapy, chiropractic care, and more invasive procedures, but Botox injections were found to be the most effective treatment for reducing the severity and frequency of Schultz's headaches. He recommended that Schultz continue to receive numerous Botox injections into her head, neck, and shoulders every twelve weeks, or approximately every three months, for the remainder of her life to manage her symptoms. Siebert also expressed a need for one to two visits per year for PM&R routine care, and he briefly mentioned physical therapy but could not recall what he recommended for future care in that regard. Finally, Siebert testified that he met with Aaron Wolfson, Ph.D., a certified life-care planner hired by Schultz, to convey his above opinions about Schultz's future medical needs.

¶14 Wolfson then testified regarding the cost of Schultz's future medical care based on recommendations from her treatment providers.[5] After outlining his

---

[5] Before Wolfson testified, counsel for Clark moved, outside of the presence of the jury, to preclude him from testifying to the cost of future physical therapy and chiropractic care, arguing that Schultz had not presented any medical expert testimony supporting the need for these future treatments. Counsel for Schultz responded that Schultz would testify that she would continue to receive these treatments in the future. The circuit court denied the motion. The court reasoned that Siebert had laid a foundation for Wolfson's testimony, but it also made the following ruling:

> I think consistent with my pretrial ruling if you feel there's some type of hearsay statement that would come in inappropriately during [Wolfson's] testimony, you can raise that hearsay objection; and I'll consider that. But I will allow [Wolfson] to generally testify as to, based on his review of the medical records, what he believes future care would entail with regards to physical therapy.

training and qualifications, Wolfson testified that he reviewed Schultz's medical records, spoke with Schultz by video conference, and spoke with her treatment providers, including Siebert, Schultz's physical therapist, and Schultz's chiropractor. After obtaining recommendations from those providers regarding Schultz's need for future care, Wolfson, who is not a medical doctor, created a life-care plan that included projections based on the reasonable cost for these services in the geographic area where Schultz lives and based on Wolfson's estimated remaining life expectancy for Schultz of 51.4 years. Wolfson's life-care plan table, which was admitted into evidence and published to the jury, included low-end and high-end cost projections for future Botox injections, PM&R routine care, chiropractic care, physical therapy, and cervical X-rays. Wolfson's table projected total future medical costs of $867,974.40 on the low end and $1,839,267.88 on the high end, before accounting for inflation.

¶15    Chad Garland, a certified public accountant and forensic economist, testified as an expert in economics regarding the present value of Schultz's future medical expenses after accounting for inflation. Garland calculated that the present value of Schultz's future medical expenses ranged from $1,103,580.64 to $2,338,515.23. As noted above, the jury ultimately awarded $1,428,750 for future medical expenses.

¶16    On appeal, Clark asserts that Schultz "failed to meet the first criteri[on] necessary to sustain an award for future chiropractic care and physical therapy" because she did not call any chiropractor or physical therapist to testify to the reasonableness and necessity of these future treatments as resulting from the accident. According to Clark, Siebert's "vague statement" about physical therapy "does not meet the standard of expert opinion testimony rendered to a reasonable degree of medical certainty." Further, because Wolfson is not a medical doctor,

8

Clark asserts that he is not qualified to give his opinion regarding Schultz's need for future care, and "Wolfson's testimony regarding what he heard from Ms. Schultz's non-testifying providers is not admissible medical evidence of the need for future chiropractic care or physical therapy." Therefore, Clark contends that "the criteria to sustain an award for the cost of future chiropractic care and physical therapy ha[ve] not been met."

¶17 We concur that there is no credible evidence from which a jury could find the nature and extent of any physical therapy or chiropractic care Schultz will require in the future as a result of the accident. As an initial matter, it is clear that Siebert's testimony—that "Schultz will have some degree of neck pain or migraines persistently for the rest of her life" as "a result of this crash" and that he recommended "Botox injections every twelve weeks or roughly every three months" as treatment for her injury—was sufficient to satisfy the first criteria to sustain the damage award with regard to the Botox treatments. Siebert also testified that Schultz would need one to two office visits per year for PM&R routine care. Based on this information, Wolfson then provided his expert opinion regarding the costs per year for both Schultz's Botox and her routine care. Accordingly, we conclude that Schultz met her burden to prove the nature and extent of her future medical expenses for Botox and PM&R routine care that she will incur as a result of the accident. We note, for the record, that the jury was not provided with the damage figures, adjusted for inflation, for the cost of the Botox and PM&R routine care alone.

¶18 We agree with Clark, however, that the evidence submitted was insufficient to support an award for future physical therapy and chiropractic care. As the circuit court recognized, Schultz "did not have physical therapists or chiropractors testify." As a result, there is a complete lack of any expert testimony

9

in the record establishing that the chiropractic care that Schultz was receiving was in any way related to the accident in this case. While her past history of that type of care is relevant, it is insufficient to meet her burden to prove, by a preponderance of the evidence, that such care was necessary in the future as a result of the accident. While Schultz testified that she received chiropractic care to treat her injury from the accident and that she would continue to see the chiropractor (but not as often because the Botox was working), Schultz is not a chiropractic expert. The nature and extent of Schultz's injuries requiring chiropractic care that were sustained as a result of the accident, and the nature and extent of any future care required to treat those injuries, is not within the knowledge of a lay person; therefore, her testimony alone is insufficient under the criteria discussed above.

¶19 Furthermore, although Wolfson could rely on Schultz's chiropractic treatment records to inform his expert opinion about *the cost* of Schultz's chiropractic expenses, those treatment records are not admissible to establish that Schultz received or required chiropractic care *as a result of* her injury in the accident, nor are they admissible to establish the nature and extent of the chiropractic care Schultz will require in the future as a result of the accident. *See* WIS. STAT. § 907.03; ***Walworth County v. Therese B.***, 2003 WI App 223, ¶¶8-9, 267 Wis. 2d 310, 671 N.W.2d 377 ("[A]lthough … § 907.03 allows an expert to base an opinion on hearsay, it does not transform the hearsay into admissible evidence."). This limitation is particularly relevant here, where there was evidence that Schultz received chiropractic care prior to the accident. Therefore, because the record does not establish a nexus between Schultz's injury and the need for and frequency of her future chiropractic care, the record does not support any award for future chiropractic expenses.

¶20    The question of physical therapy is a closer one, but we conclude that the record is deficient on this question as well.  During Siebert's testimony, he made the following statement regarding his discussion with Wolfson: "I believe we talked about physical therapy as well; but I don't recall what that number was." Siebert was not asked any follow-up questions to clarify his recommendation or refresh his memory.  That statement, alone, is insufficient evidence of the need for and the frequency of Schultz's future physical therapy treatment resulting from the accident.  Therefore, as with the chiropractic care, while Wolfson could rely on what Siebert told him to estimate future costs, there is no evidence of what Siebert told Wolfson with regard to the nature and extent of Schultz's need for future physical therapy related to the accident beyond Wolfson's testimony, which is hearsay.  The evidence is, thus, insufficient to support an award with regard to future physical therapy expenses.

¶21    In denying Clark's motion for a new trial on this issue, the circuit court reasoned, however, that "given the nature of the testimony and the assertion from [Schultz] that the Botox treatments would be primarily what she would need in the future[,] it's not unreasonable" for the jury to "award … 1.4 million," which is essentially a finding of harmless error.[6]  Clark responds to that ruling on appeal

---

[6] WISCONSIN STAT. § 805.18(2) provides as follows:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

(continued)

by arguing that "[t]his is not an appropriate basis to sustain the award" because "it is impossible to conclude beyond a reasonable doubt that the jury's award for future medical treatment did not include damages for future physical therapy and/or chiropractic treatment." According to Clark, because "the jury did not specify the types of treatment included in the award," "the error was not harmless."

¶22     We agree with Clark that we cannot affirm the jury's award in this case by assuming that the award encompassed only the Botox treatments and PM&R routine care. Although there is no requirement that the jury allocate particular types of treatment within its award, because the jury awarded a lump sum, we are unable to discern, under these circumstances, what the jury relied upon to reach its decision. The jury's award of approximately $1.4 million does not equal the total amount that Wolfson testified would encompass the Botox, PM&R routine care, physical therapy, and chiropractic care—either with regard to the low estimate or the high estimate. Accordingly, the jury did not outright accept Wolfson's and Garland's testimony. Further, the jury's award was greater than the total amount Wolfson testified would be necessary for Botox and routine care alone. Therefore, as Clark argues, while the jury would have been at liberty to award $1.4 million for the Botox alone, there is no indication in the record that the jury did so, and because the Botox and PM&R routine care estimate was less

---

"For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Nommensen v. American Cont'l Ins.*, 2001 WI 112, ¶52, 246 Wis. 2d 132, 629 N.W.2d 301 (citation omitted). "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (citation omitted).

than the total award, we cannot assume the award was meant to encompass only those medical expenses.

¶23    Based upon the forgoing, we cannot determine whether the jury included an amount for future physical therapy or chiropractic care in its award for future medical expenses related to the accident.  Further, because there is no evidence in the record from an expert witness to support Schultz's need for physical therapy and/or chiropractic care in the future as a result of the accident, or the nature and extent of that care, and because Wolfson's testimony, relying on hearsay to opine on the cost of that care, was also insufficient to prove the need for and extent of that future care, we must reverse the jury's award of future medical expenses.  Thus, we remand for a new trial on the narrow issue of what sum of money will compensate Schultz for damages caused by the accident in regard to future medical expenses.[7]

## II. Accident reconstruction expert

¶24    Prior to trial, Clark filed a motion in limine, seeking to preclude the introduction of the Handbook into evidence, along with the testimony of Schultz's accident reconstruction expert, Matthew Furrer, with regard to the Handbook.  The

---

[7] We pause to note that "[t]he power of the court, trial and appellate, to limit the issues to be retried is generally recognized," *Leonard v. Employers Mut. Liab. Ins.*, 265 Wis. 464, 470, 62 N.W.2d 10 (1953), and "[t]he court may grant a partial new trial when the error is confined to one issue which is 'entirely separable' from the others," *Badger Bearing, Inc. v. Drives & Bearings, Inc.*, 111 Wis. 2d 659, 673, 331 N.W.2d 847 (Ct. App. 1983) (citation omitted).  We conclude that the issue of damages for future medical expenses is separable from the question of liability and any other damage award and that justice would not be served by mandating a new trial on all the issues in this case.  The determination of the amount of future medical costs related to the accident is anchored in forward-looking projections of necessary clinical care; therefore, it is an independent factual determination that can be presented to a new jury without reference to the other settled aspects of this case that were resolved at the prior trial.

circuit court denied that motion. Clark argues on appeal that the court erred by allowing Furrer to testify that Clark failed to maintain the proper vehicle following distance prior to the accident and by allowing the Handbook to be published to the jury.

¶25 According to Clark, Furrer's testimony was improper because his opinion about Clark's "following distance was based upon a simple math equation …, not his expertise in the field of accident reconstruction"; his opinion was based on the "recommended following distance set forth in the … Handbook, which does not set legal requirements for following distance"; and his testimony impermissibly "instruct[ed] the jury on the law and proffer[ed] expert legal conclusions." *See **Racine County v. Oracular Milwaukee, Inc.**, 2010 WI 25, ¶28, 323 Wis. 2d 682, 781 N.W.2d 88 ("[E]xpert testimony is not necessary to assist the trier of fact concerning matters of common knowledge or those within the realm of ordinary experience."); **State v. Pico**, 2018 WI 66, ¶42, 382 Wis. 2d 273, 914 N.W.2d 95 ("Expert testimony is admissible to address questions of fact, not law. This is so because 'the only expert on domestic law is the court.'" (citation omitted)).

¶26 "Expert testimony is admissible provided that the witness is 'qualified as an expert by knowledge, skill, experience, training, or education,' and the testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" **Oracular Milwaukee**, 323 Wis. 2d 682, ¶28 (quoting WIS. STAT. § 907.02(1)). Trial courts have wide discretion to admit the testimony of an expert witness. **Kreyer v. Farmers' Coop. Lumber**, 18 Wis. 2d 67, 75, 117 N.W.2d 646 (1962). "A [circuit] court's decision to admit or exclude evidence is a discretionary determination and will not be disturbed on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and in

accordance with the facts of record." ***State v. Weber***, 174 Wis. 2d 98, 106, 496 N.W.2d 762 (Ct. App. 1993). The circuit court also has broad discretion to determine the relevance and admissibility of evidence, and its decision will not be reversed absent an erroneous exercise of discretion. ***State v. Oberlander***, 149 Wis. 2d 132, 140-41, 438 N.W.2d 580 (1989).

¶27 We conclude that the Handbook and Furrer's testimony were properly admitted at trial. First, on the question of whether the Handbook was properly published to the jury, the Handbook is an official publication of the Wisconsin Department of Transportation (DOT), which provides safety guidelines for motorcyclists. We have previously approved the admissibility of government agency guidance documents, like the Handbook, under various evidentiary theories.

¶28 For example, in ***Lievrouw v. Roth***, 157 Wis. 2d 332, 353-54, 459 N.W.2d 850 (Ct. App. 1990), the circuit court "received into evidence a photographically-reproduced copy of [a] multi-page document entitled *Wisconsin Motorists Handbook*," which included "the document's assessment of alcohol's effect on a person's driving ability." Based on the Motorists Handbook's status as a DOT publication, we held that the document was admissible under WIS. STAT. § 908.03(8) and (18), which are hearsay exceptions for public records and reports and a learned treatise. ***Lievrouw***, 157 Wis. 2d at 354-55 & n.9; *see also* ***Schmiedeck v. Gerard***, 42 Wis. 2d 135, 141 n.9, 166 N.W.2d 136 (1969) (taking judicial notice of Wisconsin's Manual for Motorists and collecting cases); ***Sullivan v. Waukesha County***, 218 Wis. 2d 458, 469-72, 578 N.W.2d 596 (1998) (concluding that the circuit court erred by excluding a pamphlet published by the DOT and the Wisconsin State Patrol entitled "Basic Training Program for Breath Examiner Specialist" based on the public records hearsay exception).

¶29 Similar to the Motorists Handbook in *Lievrouw*, the Handbook is a DOT publication that provides guidance on safe riding techniques for motorcyclists and contains information needed to pass the motorcycle knowledge test required to obtain a license to operate a motorcycle in Wisconsin. *See* WIS. DEP'T OF TRANSP., WISCONSIN MOTORCYCLISTS' HANDBOOK 3-4, 6-7 (2023), https://wisconsindot.gov/Documents/dmv/shared/bds110-mc-manual.pdf. We see no reason for the Handbook to be treated differently in this case. Additionally, the circuit court provided a limiting instruction to the jury, explaining that the Handbook "is a recommendation from the Division of Motor Vehicles. It's not codified in the law, and it's not necessarily a legal standard." Therefore, the circuit court did not erroneously exercise its discretion by allowing portions of the Handbook to be published to the jury.[8]

¶30 We also conclude that Furrer properly relied on the Handbook's recommendation as one factor, but not the only factor, he considered in opining that Clark's following distance behind Olson was inadequate under the

---

[8] In his reply brief, Clark argues that *Schmiedeck v. Gerard*, 42 Wis. 2d 135, 166 N.W.2d 136 (1969), and *Lievrouw v. Roth*, 157 Wis. 2d 332, 459 N.W.2d 850 (Ct. App. 1990), do not assist Schultz. According to Clark, "*Schmiedeck* provides only that the court may 'take judicial notice of stopping distances as set forth in the Wisconsin's Manual for Motorists,'" "not to instruct the jury on the following distance that should be maintained for safe driving." *See Schmiedeck*, 42 Wis. 2d at 141. Clark also asserts that *Lievrouw* "does not support the admission of Matthew Furrer's testimony" because it actually "provides that expert testimony regarding legal concepts for which the jury needs definitional instructions is inadmissible." *See Lievrouw*, 157 Wis. 2d at 351-52.

As an initial matter, we note that the *Schmiedeck* court did not limit the court's taking of judicial notice of the Manual for Motorists for only one specific purpose. Therefore, that case does not prohibit the Handbook from being admitted or from Furrer relying on it in any way. As for *Lievrouw*, for the reasons that we explain in more detail below, we reject Clark's argument that Furrer "instruct[ed] the jury that proper following distance is defined by the recommendations set forth in the Handbook." Furrer merely used the Handbook as one factor in providing his expert opinion that Clark had been following Olson too closely.

circumstances.[9] During the trial, Furrer testified that the Handbook recommends that motorcyclists maintain at least a four-second following distance[10] and that at 65 miles per hour, a motorcycle travels approximately 95 feet per second. Therefore, he explained that a four-second following distance at 65 miles per hour calculates to approximately 380 feet. Clark had testified that he was following Olson's vehicle at a distance of 25 to 30 feet while traveling at 65 miles per hour.

¶31     Using Clark's testimony, Furrer concluded that Clark was following at approximately one-tenth of the recommended safe following distance. Importantly, he further opined, to "a reasonable degree of engineering probability," that if Clark had only doubled his following distance, which would still have been below the Handbook's recommendation, that distance "would have been sufficient to avoid the initial impact given the facts of this case." Furrer also explained that the traffic conditions that day were not ideal, and he provided testimony regarding perception-reaction time and the physics of motorcycle braking to explain how it impacts stopping distances.

---

[9] We pause to note that even if we had concluded above that the Handbook was inadmissible evidence, it would not necessarily have been erroneous for Furrer to have relied on the Handbook as a basis for his expert opinion. Under Wisconsin law, expert witnesses may properly rely on inadmissible evidence if the evidence is of a type reasonably relied upon by experts in the particular field in forming an opinion or inference. WIS. STAT. § 907.03. Nevertheless, § 907.03 is not a hearsay exception, and the facts or data relied on by the expert do not then become admissible for the truth of the matter asserted. *State v. Watson*, 227 Wis. 2d 167, 198-99, 595 N.W.2d 403 (1999).

[10] The Handbook states that "[a] minimum of four seconds following distance is recommended under ideal driving conditions. Less than perfect riding conditions"—such as "[i]f the pavement is slippery, if you cannot see through the vehicle ahead or if traffic is heavy"— "require increasing available time and space." WIS. DEP'T OF TRANSP., WISCONSIN MOTORCYCLISTS' HANDBOOK 25 (2023), https://wisconsindot.gov/Documents/dmv/shared/bds110-mc-manual.pdf.

¶32    The circuit court did not erroneously exercise its discretion by allowing Furrer's testimony in this case.  The Handbook is an authoritative guideline on safety for motorcyclists, and Furrer testified that it is a source that accident reconstruction experts rely upon in forming opinions about whether a motorcyclist was following another vehicle at a safe distance.  Importantly, Furrer did not testify that the Handbook established a legal requirement.  In fact, he stated that the Handbook contains a recommendation of the safe following distance, but he explained that Clark did not require the entire recommended distance to stop.  Furrer used the Handbook's safety recommendation as one factor in reaching his expert opinion—based on his training and experience in accident reconstruction— that Clark's following distance was inadequate under the circumstances, and, contrary to Clark's argument, his opinion was based on more than a simple mathematical calculation.[11]  It was Clark's burden to show that the information

---

[11] Clark argues, citing *Racine County v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶28, 323 Wis. 2d 682, 781 N.W.2d 88, that the jury could have made the same comparison between the Handbook and Clark's following distance without Furrer's testimony.  Therefore, according to Clark, because "[i]t was based on simple division," "Furrer's expert testimony did nothing to aid the jury's understanding of Mr. Clark's following distance and was improperly admitted."

We reject Clark's assertion that the jurors could have determined this information for themselves.  Furrer's testimony involved more than the "conver[sion of] miles per hour into feet per second."  *See Schmiedeck*, 42 Wis. 2d at 142.  Instead, he provided his expert opinion that Clark was following Olson's vehicle at an unsafe distance, an opinion that an expert in accident reconstruction and crash analysis is entitled to provide.  As noted above, his opinion provided the jury with information on the stopping distances at which the accident could have been avoided.  It was based on multiple factors, of which the Handbook's recommendation was just one component, and took into consideration the traffic and weather conditions and the size, weight, and location of the respective vehicles.  Accordingly, Furrer's testimony was not a "matter[] of common knowledge or … within the realm of ordinary experience."  *See Oracular Milwaukee*, 323 Wis. 2d 682, ¶28.

(continued)

Furrer relied on to reach his expert opinion was not accurate or reliable. *See* ***Klingman v. Kruschke***, 115 Wis. 2d 124, 127, 339 N.W.2d 603 (Ct. App. 1983) ("Where the premises leading to the expert's conclusion are attacked as inadequate, it is the duty of opposing counsel to draw out the data that led to the expert's opinion.").

¶33 Additionally, the jury was properly instructed on the law. WISCONSIN STAT. § 346.14(1m) provides that "[t]he operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." The circuit court provided WIS JI—CIVIL 1112 to the jury, which mirrors the language in § 346.14(1m):

> The driver of a motor vehicle should not follow another vehicle more closely than is reasonable and prudent.
>
> In determining whether a driver was following the vehicle ahead more closely than was reasonable and prudent, you should consider the speed and location of both vehicles, the amount of traffic, the condition of the highway, and the visibility at the time.

WIS JI—CIVIL 1112. Further, as noted above, the circuit court provided the jury with a limiting instruction regarding the Handbook. Therefore, the jury was well aware that the four-second following distance in the Handbook was not the law, and the jury was, instead, properly instructed on the statutory standard.

---

Clark also suggests, citing ***Phelps v. Physicians Insurance Company of Wisconsin***, 2005 WI 85, ¶25, 282 Wis. 2d 69, 698 N.W.2d 643, that the circuit court erred by allowing Furrer to instruct the jury on a heightened standard of care. We disagree. Furrer merely provided an admissible expert opinion on whether Clark's following distance was "reasonable and prudent" under WIS. STAT. § 346.14(1m), appropriately using the Handbook to support his analysis. ***Phelps*** is distinguishable because the question in that case involved determining the applicable standard of care for an unlicensed medical resident. *See* ***Phelps***, 282 Wis. 2d 69, ¶25. Here, the legal standard under § 346.14(1m) is specified by the legislature and already known.

## III. WISCONSIN JI—CIVIL 405

¶34     Next, Clark argues that the circuit court erred by refusing to read to the jury WIS JI—CIVIL 405, Falsus in Uno.  That instruction provides as follows: "If you are satisfied from the evidence that a witness has willfully testified falsely to a material fact, you may, in your discretion, disregard all the testimony of the witness which is not supported by other credible evidence in the case."  WIS JI—CIVIL 405.  "In order for the falsus in uno instruction to be appropriate, the false testimony must be on a material point and must be willful and intentional."  *State v. Williamson*, 84 Wis. 2d 370, 394, 267 N.W.2d 337 (1978).  "Mere discrepancies in the testimony that are most likely attributed to defects of memory or mistake are no basis for rejecting a witness's testimony entirely."  *Id.*

¶35     A circuit court has broad discretion to instruct a jury.  *Nommensen v. American Cont'l Ins.*, 2001 WI 112, ¶50, 246 Wis. 2d 132, 629 N.W.2d 301.  "A circuit court appropriately exercises its discretion in administering a jury instruction so long as the instruction as a whole correctly states the law and comports with the facts of the case."  *Weborg v. Jenny*, 2012 WI 67, ¶42, 341 Wis. 2d 668, 816 N.W.2d 191.  We independently review whether a jury instruction is a correct statement of the law.  *Id.*

¶36     Clark argues that the standard of "willful and intentional" false testimony has been established here because "Schultz falsely testified during her discovery deposition that she had no history of neck pain prior to the subject accident," which is material to her claim, and "[i]t can be inferred that Ms. Schultz willfully and intentionally denied her significant history of prior neck pain to convince the jury that the subject accident was the sole cause of her complaints."

20

According to Clark, "[t]here is no credible evidence that Ms. Schultz simply forgot that she frequently received treatment for neck pain prior to the accident."

¶37 We conclude that the circuit court did not err by refusing to instruct the jury on WIS JI—CIVIL 405. First, as Schultz identifies, the comment to WIS JI—CIVIL 405 explicitly states that "[u]se of this instruction is not favored" and that "[i]t should not be given routinely." Our supreme court has also recognized that "[t]he falsus in uno instruction is not favored in the law." *Williamson*, 84 Wis. 2d at 395.

¶38 Second, there must be some basis in the evidence to show false swearing. *Id.* at 394-95. Beyond perhaps a discrepancy between Schultz's deposition testimony and her trial testimony regarding whether her previous chiropractic treatment was also to treat neck pain, there is no conclusive evidence that Schultz intentionally testified falsely on a material matter. Further, Clark had ample opportunity to cross-examine Schultz and attack her credibility, and Schultz repeatedly explained how her symptoms were exacerbated following the subject crash, which was supported by other evidence in the record.

¶39 Third, the jury was adequately instructed on witness credibility, including WIS JI—CIVIL 215, and Clark amply argued Schultz's credibility issues during closing argument. The circuit court did not erroneously exercise its discretion when it refused to give WIS JI—CIVIL 405.

## IV. Unavoidable accident

¶40 Finally, Clark argues that the circuit court erred by refusing to read the nonstandard jury instruction on unavoidable accidents, adopted from *Millonig*, which reads: "[T]he common law does not impose upon anyone an absolute duty

to avoid an accident [and it] does not contemplate that all accidents or mishaps must arise as a consequence of fault." *Millonig*, 112 Wis. 2d at 452. According to Clark, the nonstandard jury instruction should have been read to the jury because it was "permitted to conclude that the traffic slowdown and/or Ms. Olson's action[ of moving to the left] created a situation in which the subject collision was unavoidable" and that "no one was at fault in causing the accident." Clark asserts that "[t]here is a reasonable possibility that, had the instruction been read, the jury's determination on negligence would have been different."

¶41 We reject Clark's claim of circuit court error. Again, a circuit court has broad discretion when it instructs a jury. *Nommensen*, 246 Wis. 2d 132, ¶50. As the court recognized when it denied Clark's motion to set aside the jury's verdict, it provided other standard instructions—including WIS JI—CIVIL 1105 (management and control), WIS JI—CIVIL 1105A (management and control-emergency), and WIS JI—CIVIL 1355 (deviation from traffic lane)—which essentially informed the jury that it "could consider whether or not the accident was unavoidable." Thus, the court concluded that the nonstandard jury instruction was unnecessary.

¶42 Clark cites no legal authority in support of his claim that the circuit court erroneously exercised its discretion by failing to present this nonstandard instruction to the jury. Instead, Clark merely disagrees with the court's discretionary decision, which is not a basis for a new trial under our standard of review. This rear-end collision case did not present such an unusual or unique fact pattern that the nonstandard jury instruction was required, and the standard jury

instructions the court did provide sufficiently informed the jury of the rules applicable to their analysis.[12]

¶43    Based on the foregoing, and in conclusion, we reverse the judgment of the circuit court as to the award for future medical expenses, but we affirm the court's judgment with regard to all other issues presented on appeal.  Accordingly, we remand to the circuit court for a new trial on only the issue of Schultz's future medical expenses caused by the accident.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[12] Clark's two remaining arguments can be addressed on the basis of the forfeiture doctrine.  On the first issue, Clark argues that Schultz's counsel improperly disclosed to the jury that he took Clark's deposition in prison when he asked, "[D]o [you] recall back on April 24th, 2024, I came to the prison to get your sworn deposition testimony?"  Clark asserts that the question regarding his being incarcerated was irrelevant and violated WIS. STAT. §§ 904.03 and 906.09(1), and he contends that the jury could have concluded that he was incarcerated as a result of the accident at issue.  On the second issue, Clark argues that Schultz's counsel's rebuttal during closing argument contained "extremely inflammatory language in light of the highly publicized recent shooting of UnitedHealthcare CEO Brian Thompson, with the words 'deny,' 'defend,' and 'depose' found on shell casings at the scene of the shooting."  He contends that "counsel no doubt wanted to incite anti-insurance sentiment among the jurors, to prejudice the jury against … Artisan."

The problem with both of Clark's arguments, however, is that his counsel did not object to either the question about prison or the closing argument during the trial.  "In order to preserve an issue for appeal as a matter of right, a party must object to the error at trial, stating the proper ground for the objection." *State v. Romero*, 147 Wis. 2d 264, 274, 432 N.W.2d 899 (1988); *see also State v. Goodrum*, 152 Wis. 2d 540, 549, 449 N.W.2d 41 (Ct. App. 1989) ("Failure to object at the time of the alleged improprieties in the closing argument also [forfeits] review of that alleged error."). Accordingly, Clark has forfeited these arguments.